[No. F003242. Fifth Dist. Nov. 20, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
EDWARD ARMENDARIZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I through V, VII and IX.

COUNSEL

Mark D. Greenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BEST, J.—At a bifurcated jury trial, defendant was convicted first of robbery (Pen. Code,[1] § 211) and then found to have been convicted previously

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

of a serious felony, assault with a deadly weapon (§ 245, subd. (a)) within the meaning of section 667. Defendant was sentenced to the middle term of three years for the robbery conviction plus a consecutive five-year enhancement pursuant to section 667.

On appeal, defendant raises multiple claims of error, including prosecutorial misconduct during voir dire of prospective jurors, erroneous admission of opinion testimony to impeach a defense witness, erroneous admission of defendant's prior conviction of assault with a deadly weapon for impeachment purposes, and error in imposing the section 667 enhancement. After discussion, we will affirm but modify the judgment by striking the five-year enhancement.

## THE FACTS

The robbery occurred at the Capri liquor store in McFarland. The prosecution's key witness was the cashier of the store, Francisco Vela. Mr. Vela testified that defendant and a companion, Victor Lopez, entered the store on the evening of March 18, 1983. Defendant asked whether Mr. Vela's coworker or the store's manager was on the premises. Mr. Vela said they were not. Defendant then told Mr. Vela to tell the manager, when Vela saw him, that "Eddie Boy" was back.

Defendant and Lopez then walked down an aisle containing bottles of liquor. Defendant removed a bottle of tequila from the shelf and replaced it. He then took off his coat, handed it to Lopez and took the tequila off the shelf again. At this point, Lopez was standing between defendant and Vela, so that Vela could not see precisely what defendant was doing. Vela, however, could see that defendant was "moving or handling" his shirt. He never saw the bottle of tequila placed back on the shelf. As defendant walked toward the cash register, he was pulling his shirt out and over the waistband of his pants.

At the cash register, Lopez paid for a bottle that he had gotten. When defendant and Lopez started to walk out of the store, Vela asked if defendant was planning to pay for the bottle he had taken. Defendant, then, turned and walked back toward Vela. Pulling up his shirt to reveal the handle of a gun and the top of a bottle stuck in his waistband, defendant declared he had nothing but his gun. Defendant and Lopez then left the store without further interference from Vela and drove off in a car.

The defense theory was that the incident never occurred. The theory was brought out by attacking the credibility of the prosecution's witness through pointing out inconsistencies in his testimony and story. Defendant also

called Victor Lopez as a defense witness, who testified that he and defendant went to the liquor store that night and that they only bought two bottles of Coke and one bottle of Calvert. He denied that any confrontation with Vela took place. Lopez also testified that he was 19 years of age and had purchased liquor from Vela on several prior occasions.

## DISCUSSION

### I-V*

. . . . . . . . . . . . . . . . . . . . .

### VI

*Did the trial court improperly rule that defendant's prior felony conviction of assault with a deadly weapon would be admissible for impeachment purposes?*

The district attorney requested that the trial court allow the use of all prior felony convictions for impeachment purposes. The trial court ruled that all prior felony convictions would be admissible. From the probation report it appears the defendant twice pleaded guilty to the charge of assault with a deadly weapon. Defendant did not testify in his own behalf. In a letter brief submitted on the basis of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], defendant contends on appeal that the trial court erred in allowing the admission of his felony conviction because assault with a deadly weapon is not a crime of moral turpitude. In the alternative, if assault with a deadly weapon is a crime of moral turpitude, he argues the trial court erred in failing to exercise its discretion under Evidence Code section 352 to exclude the prior.

In *People* v. *Castro*, the California Supreme Court construed article I, section 28, subdivision (f), of the state Constitution, which provides in part: "Any prior felony conviction of any person in any criminal proceeding, whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

This provision had been read and applied by some trial courts so as to take away the trial court's discretion to exclude prior felony convictions pursuant to Evidence Code section 352. ■ The *Castro* court, however,

*See footnote on page 674, *ante*.

held that the trial court retains its discretion to exclude prior felonies despite article I, section 28, subdivision (f). It also held, though, that only those prior felonies that are crimes of moral turpitude are relevant to impeach a witness' credibility. The court stated: "We shall hold that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes the use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty. On the other hand, subdivision (d), as well as due process, forbids the use of convictions of felonies which do not necessarily involve moral turpitude." (*People* v. *Castro, supra,* 38 Cal.3d at p. 306.)

We must first determine whether assault with a deadly weapon (§ 245, subd. (a)(1)) is a crime involving moral turpitude.

The *Castro* court gave some guidance on how to determine whether a crime involved moral turpitude. ■ Citing to an opinion by Justice Holmes, the court first noted the rationale behind allowing felony impeachment: " '[W]hen it is proved that a witness has been convicted of crime, the only ground for disbelieving him which such proof affords is the *general readiness to do evil* which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in a particular case, and thence that he has lied in fact. . . .' " (*People* v. *Castro, supra,* 38 Cal.3d at p. 314.) The court then stated: "It follows, therefore, that if the felony of which the witness has been convicted does not show a 'readiness to do evil,' the fact of conviction simply will not support an inference of readiness to lie." (*Ibid.*)

■ While not attempting to list or specify those felonies which involve moral turpitude, the *Castro* court clearly states that moral turpitude does not depend solely on dishonesty being an inherent element of the felony. "[I]t is undeniable that a witness' moral depravity of *any kind* has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence in his honesty." (*People* v. *Castro, supra,* 38 Cal.3d at p. 315, italics added.) ■ *Castro,* therefore, equates moral turpitude with a "readiness to do evil" (*id.,* at p. 314) and "moral depravity," i.e., "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." (*In re Craig* (1938) 12 Cal.2d 93, 97 [82 P.2d 442]; 2 Bouvier's Law Dict. (3d rev. ed. 1914) p. 2247; 1 Witkin, Cal. Procedure (3d ed. 1985) Attorneys, § 375, pp. 424-425; see also Annot., 23 A.L.R.Fed. 480, 488 involving exclusion or deportation of aliens under Federal Immigration and Naturalization Act.)

■ *Castro* then recognizes that assaultive crimes bear some relevance to credibility by quoting from *People* v. *Rist* (1976) 16 Cal.3d 211, 222

[127 Cal.Rptr. 457, 545 P.2d 833], " 'convictions which are assaultive in nature do not weigh as heavily in the balance favoring admissibility as those convictions which are based on dishonesty or some other lack of integrity' " and then concludes, " 'Not as heavily' does not, of course, mean 'not at all.' " (*People* v. *Castro, supra,* 38 Cal.3d at p. 315.)

██ The court's final dictate is that moral turpitude must be found, if at all, only on the least adjudicated elements of the crime. "[A] witness' prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Castro, supra,* at p. 317.) We understand this to mean that the facts underlying a prior felony conviction may not be reviewed in order to determine whether the crime involved moral turpitude.

Section 240 defines an assault as ". . . an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."

██ Under California law, an attempt to commit a crime requires (1) a specific intent to commit a particular crime, and (2) a direct but ineffectual act done toward its commission. (§ 664; 1 Witkin, Cal. Crimes (1963) § 93, p. 90.) ██ However, our Supreme Court has held that simple assault and assault with a deadly weapon constitute only general intent crimes. "[T]he intent for an assault with a deadly weapon is the intent to attempt to commit a battery, a battery being 'any willful and unlawful use of force or violence upon the person of another.' (Pen. Code, § 242.) We conclude that the criminal intent which is required for assault with a deadly weapon . . . is the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another. Given that intent it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury [citation], to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary." (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372], fns. omitted; see also *People* v. *Hood* (1969) 1 Cal.3d 444, 452-455 [82 Cal.Rptr. 618, 462 P.2d 370].)

██ Thus, while an assault with a deadly weapon does not require proof of a specific intent to injure another, it does require proof of "the general intent to wilfully commit an act the direct, natural and probable consequences of which if successfully completed would be the injury to another." We conclude that the least adjudicated elements of any assault-with-a-deadly-weapon conviction are (1) the intentional commission of an act (2) with a deadly weapon, (3) the successful completion of which would probably

result in injury to the person of another. It is, then, an assaultive crime which, in our view, involves moral turpitude within the meaning of *Castro.*

We are mindful of the Supreme Court holdings in attorney discipline cases that assault with a deadly weapon does not involve moral turpitude per se. (*In re Rothrock* (1940) 16 Cal.2d 449, 458-459 [106 P.2d 907, 131 A.L.R. 226]; see also *In re Strick* (1983) 34 Cal.3d 891, 902 [196 Cal.Rptr. 509, 671 P.2d 1251].) In those cases, however, the court was concerned with determining an attorney's fitness to continue his practice according to the ethical standards of the legal profession. With this in mind, the court held that the bare fact of conviction of assault with a deadly weapon did not involve moral turpitude as a matter of law, and it was necessary, therefore, that the court look behind the fact of conviction to ascertain the nature of the assault and the circumstances under which it occurred in order to determine the attorney's moral fitness to practice law. Holding that the bare fact of a conviction for assault with a deadly weapon does not necessarily reflect upon an attorney's moral fitness to practice law is a far cry from holding that the fact of such conviction has some relevance—however tenuous—on the issue of a witness' credibility. We are of the opinion that the Supreme Court's holding in *In re Rothrock, supra,* does not compel a finding that assault with a deadly weapon is not a crime involving moral turpitude within the meaning of *Castro.*

In the instant case, the trial court failed to exercise its discretion pursuant to Evidence Code section 352 in determining that the prior conviction would be admissible for impeachment purposes. Such failure was clearly error under *Castro.* (*People* v. *Castro, supra,* 38 Cal.3d at p. 317.)

We must, then, determine whether the error requires reversal of the judgment.

While it cannot be said that the evidence in this case was overwhelming, it was strong. The testimony of Francisco Vela, which was accepted by the jury, provided substantial evidence to support defendant's conviction. The defense theory of the case was that while defendant was in the store with Victor Lopez, defendant did not have a gun and did not take the bottle of tequila. Defendant presented two witnesses in support of this theory. Victor Lopez testified that he and defendant went into the store, purchased two sodas and a bottle of Calvert and left the store without incident. He also testified that defendant did not have a gun. The other witness was Josie Esparza who testified that she accompanied defendant and Lopez to the store but remained outside in the car. When the two men returned, Lopez had two sodas. She never saw a bottle of tequila and did not see a gun in defendant's possession. Evidence supporting defendant's theory was there-

fore presented to the jury and had defendant taken the stand, his testimony would have had to have paralleled that of Lopez in order to avoid impeaching his own defense witness.

As Presiding Justice Brown of this court stated in *People* v. *Parrish* (1985) 170 Cal.App.3d 336, 352-353 [217 Cal.Rptr. 700]: "We are aware of the doctrine developed by the progeny of *People* v. *Beagle* (1972) 6 Cal.3d 441 . . . which hold in substance that if the defendant stayed off the stand as the result of a threat of impeachment by prior felonies and the felonies were not in fact admissible then reversal usually followed. As the Supreme Court stated in *People* v. *Barrick, supra,* 33 Cal.3d 115, 130 [187 Cal.Rptr. 716, 654 P.2d 1243]: 'The record reveals that following the ruling on the *Beagle* motion, the attorney for the defendant advised him not to testify. The court has no way of knowing what defendant's testimony would have been, thus, we have no basis for concluding that such testimony would not have affected the result. " '[E]rrors at a trial that deprive a litigant of the opportunity to present his version of the case . . . are . . . ordinarily reversible, since there is no way of evaluating whether or not they affected the judgment.' (Traynor, [The Riddle of Harmless Error (1970)] at p. 68.) . . ."' 'Ordinarily' does not mean 'always.' Our research has turned up no case wherein the Supreme Court has held that the error is reversible per se. The rule by its terms indicates that the failure of the defendant to take the stand does not always result in reversal." (Fn. omitted.)

The instant case is similar, in principle, to *People* v. *Fisher* (1984) 153 Cal.App.3d 826, 833-835 [200 Cal.Rptr. 683], in which the court ultimately held, on the facts of the case, that the error was harmless even though the defendant failed to testify. In *Fisher,* the defendant had presented an alibi defense witness. (See also *People* v. *Anjell* (1979) 100 Cal.App.3d 189, 198-199 [160 Cal.Rptr. 669].)

Upon review of the entire record, we conclude it is not reasonably probable that a result more favorable to defendant would have occurred in the absence of the error. (*People* v. *Castro, supra,* 38 Cal.3d at p. 319, citing *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

In view of our conclusion that the error was harmless, we need not address the People's suggestion that defendant should be deemed to have waived the issue on appeal since he failed to testify at trial. (*Luce* v. *United States* (1984) 469 U.S. 38 [83 L.Ed.2d 443, 105 S.Ct. 460].)

VII*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

*See footnote on page 674, *ante.*

## VIII

*May defendant's prior conviction of section 245, subdivision (a), be deemed a serious felony pursuant to section 667?*

Section 667 provides in pertinent part: "(a) Any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively.

"

"(d) As used in this section 'serious felony' means a serious felony listed in subdivision (c) of section 1192.7." Section 1192.7, subdivision (c), includes a list of felonies considered to be serious. Under subdivision (c)(23) of that section, "any felony in which the defendant personally used a dangerous or deadly weapon" is a serious felony. (§ 1192.7, subd. (c)(23).)

Defendant contends that his conviction for assault with a deadly weapon could not have been considered a serious felony because the January 3, 1980, record of conviction alone did not establish that defendant personally used a dangerous weapon. The Attorney General counters this by arguing that the serious nature of the felony could be proved by referring to the information that charged the section 245, subdivision (a), violation. This issue recently has been addressed by the Supreme Court in *People* v. *Jackson*. Based on this case, it appears a conviction for a prior serious felony must be indicated on the face of the record of judgment to determine if the prior is a serious felony under sections 667 and 1192.7.

In *Jackson,* defendant was charged with three prior convictions of second degree burglary, described as residential burglaries. Under section 1192.7, subdivision (c), burglary of a residence is considered a serious felony. (See § 1192.7, subd. (c)(18).) Pursuant to a plea bargain, defendant admitted one of the prior convictions for residential burglary. His sentence was enhanced by a five-year term because of the prior conviction of a serious felony. (See *People* v. *Jackson* (1985) 37 Cal.3d 826 at pp. 830-831 [210 Cal.Rptr. 623, 694 P.2d 736].)

Defendant in *Jackson* argued that his admission that the prior burglary involved a residence was not sufficient to prove the prior crime in fact involved the burglary of a residence. He noted the judgment of conviction

for the prior felony did not show on its face a burglary of a residence, but only a conviction for second degree burglary, and entry into a residence is not an essential element of second degree burglary. Defendant contended, relying on *People* v. *Crowson* (1983) 33 Cal.3d 623 [190 Cal.Rptr. 165, 660 P.2d 389], that the court could not go beyond the defined elements of the crime to determine the nature of defendant's conduct. (*People* v. *Jackson, supra,* 37 Cal.3d at p. 833.)

The Supreme Court ultimately held defendant's five-year enhancement for the prior serious felony conviction was proper because defendant admitted that the prior burglary included the entry into a residence. (*Jackson, supra,* 37 Cal.3d at pp. 836-837.) However, in dicta, the court stated: "With respect to a prior burglary conviction, however, especially one such as defendant's which antedates Proposition 8, proof of the residential character of the burglary encounters obstacles. The record of a conviction for second degree burglary would not prove entry into a residence, even if the pleadings included superfluous allegations to that effect. (*People* v. *Crowson, supra,* 33 Cal.3d 623, 634.) Moreover, the People could not go behind that record to prove a fact which was not then an element of the crime. (*Id.,* at pp. 633-634; see *In re Finley, supra,* 68 Cal.2d 389, 393-394 [66 Cal.Rptr. 733, 438 P.2d 381]; *In re McVickers* (1946) 29 Cal.2d 264, 276 [176 P.2d 40]; *People* v. *Hickey* (1980) 109 Cal.App.3d 426, 438-439 [167 Cal.Rptr. 256].) A contrary holding, permitting the People to litigate the circumstances of a crime committed years in the past, would raise serious problems akin to double jeopardy and denial of speedy trial." (*Jackson, supra,* at p. 836, fn. omitted.)

It is clear from this language that the prosecutor is bound by the face of the record of conviction when proving the nature of a prior conviction. Reference to any facts pleaded in an information would be precluded. In the case at bench, defendant's prior record of conviction states only that defendant was charged with a violation of section 245, subdivision (a), and pleaded guilty to that charge. Section 245, subdivision (a), at the time of the conviction, provided: "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for two, three, or four years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment." (Stats. 1976, ch. 1139, § 152, p. 5105.)

Under this definition, a person could violate section 245, subdivision (a), by committing an assault on another by any means of force likely to produce great bodily injury. This does not necessarily include the element that de-

fendant personally used a dangerous or deadly weapon as called for in section 1192.7, subdivision (c)(23). Therefore, the judgment of conviction of defendant's prior does not prove he was convicted of a serious felony within the meaning of section 667. (See *People* v. *Jackson, supra,* 37 Cal.3d at p. 836.)

Assault with a deadly weapon has been held by another court not to be a serious felony under sections 667 and 1192.7, subdivision (c)(23). In *People* v. *Bradford* (1984) 160 Cal.App.3d 532 [206 Cal.Rptr. 899], the court noted while a conviction of section 245, subdivision (a)(1), for assault with a deadly weapon may involve the use of a deadly or dangerous weapon, it may not necessarily involve personal use. Therefore, assault with a deadly weapon could not fall under the category in section 1192.7, subdivision (c)(23), calling for personal use of a deadly or dangerous weapon. (*Bradford, supra,* at p. 544.)[2]

Defendant's five-year enhancement pursuant to section 667 must be stricken.

### IX*

. . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is modified to strike the finding that defendant suffered a prior serious felony conviction within the meaning of section 667 and the additional term imposed based on such finding. The trial court is directed to prepare an amended abstract of judgment that reflects such modification and to forward a certified copy of same forthwith to the appropriate authorities.

As so modified, the judgment is affirmed.

Hanson (P. D.), Acting P. J., and Fitch, J.,† concurred.

---

[2]The Supreme Court in *People* v. *Jackson* held that the serious felonies listed in section 1192.7 are not to be viewed as specific statutory offenses and enhancements. (*People* v. *Jackson, supra,* 37 Cal.3d at pp. 831-832.) That portion of the holding in *Bradford* to the contrary, therefore, has been disapproved.

*See footnote on page 674, *ante.*

†Assigned by the Chairperson of the Judicial Council.