[No. H002981. First Dist., Div. Two. Dec. 15, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE E. THOMAS, Defendant and Appellant.

[Opinion certified for partial publication.*]

---

*Pursuant to rules 976 and 976.1, California Rules of Court, this opinion is certified for publication, with the exception of that portion designated Facts and sections II and III.

## COUNSEL

Michael A. Kresser and Rosemary S. Morrison, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Ronald S. Matthias and Matthew P. Boyle, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**POLLAK, J.\***— Willie Edward Thomas appeals his conviction of possession for sale and transportation of cocaine. He argues the trial court erred in permitting a prior aggravated assault conviction to be used for impeachment purposes. Appellant also objects to various other rulings of the trial court that will be discussed in the unpublished portion of this opinion.

### STATEMENT OF THE CASE

Appellant was charged with possession of cocaine for sale and transportation of cocaine. (Health & Saf. Code, §§ 11351, 11352.) The information also alleged that appellant had been convicted of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) within the meaning of Penal Code section 667.5, subdivision (b). Additionally, two other felony convictions for possession of marijuana for sale were alleged. Appellant pleaded not guilty and denied the prior convictions.

A jury convicted appellant of both charged offenses. The trial court found the priors were valid and appellant had served a prison term. The court sentenced appellant to four years for transportation of cocaine with a one-year enhancement; the term for possession of cocaine for sale was stayed. Appellant filed a timely notice of appeal.

---

\* Assigned by the Chairperson of the Judicial Council.

FACTS*

. . . . . . . . . . . . . . . . . . . . . .

I.

*Admission of the Section 245 Conviction for Impeachment*

■ Appellant contends that the trial court erred in permitting him to be impeached with a prior conviction for assault with a deadly weapon. (Pen. Code, § 245, subd. (a)(1).) At the commencement of trial, appellant requested an order preventing the district attorney from impeaching him with the prior assault conviction and with two prior convictions for the possession of marijuana for the purpose of sale. (Health & Saf. Code, § 11359.) The court ruled that the aggravated assault conviction could be used, as it in fact was when appellant testified. The trial court also felt that the possession-for-sale offenses were usable for impeachment purposes but, under Evidence Code section 352, concluded that their potential for prejudice outweighed their probative value, and precluded the People from using them for impeachment in this case. On appeal, appellant renews his argument that the trial court should not have permitted the assault-with-a-deadly-weapon conviction to be used for impeachment.

■ In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], the Supreme Court held that the newly enacted subdivision (f) of article I, section 28, of the California Constitution, enacted in 1982 as part of the so-called Victim's Bill of Rights (Prop. 8), was subject to due process limitations imposed by the United States Constitution. Subdivision (f) provides that in any criminal proceeding "[a]ny prior felony conviction . . . shall . . . be used without limitation . . . for purposes of impeachment," but due process, the court held, precludes "impeachment with felony convictions which do not involve 'readiness to do evil'—moral turpitude . . . ." (*Id.,* at p. 314.) The court reasoned that the rationale for using prior felony convictions for impeachment "must be that . . . [they] may, somehow, be relevant to the witness' veracity." (*Id.*) Quoting from an opinion of Justice Holmes, the court observed: " '[W]hen it is proved that a witness has been convicted of crime, the only ground for disbelieving him which such proof affords is the *general readiness to do evil* which the conviction may be supposed to show. It is from that general disposition alone that the jury is asked to infer a readiness to lie in a particular case, and thence that he has

---

* See footnote, *ante,* page 689.

lied in fact.' " (*Ibid.,* quoting *Gertz* v. *Fitchburg Railroad* (1884) 137 Mass. 77, 78, italics in original.)

■ Refusing to hold that only offenses involving an element of dishonesty reflect adversely on a witness's veracity, the court held that convictions which are "assaultive in nature," although less relevant than convictions based on dishonesty, nonetheless have some relevance to credibility. There is "some basis—however tenuous—for inferring that a person who has committed a crime which involves moral turpitude other than dishonesty is more likely to be dishonest than a witness about whom no such thing is known. Certainly the inference is not so irrational that it is beyond the power of the people to decree that in a proper case the jury must be permitted to draw it, if it wishes . . . ," as the court observed the voters had done in adopting subdivision (f). (*People* v. *Castro, supra,* 38 Cal.3d 301, 315, fn. omitted.) ■ The court held that "it will be necessary to determine with respect to each felony conviction offered for impeachment—difficult though this may prove to be—whether it does or does not involve moral turpitude." (*Id.,* at p. 316.) Finally, and of critical importance with respect to the proper characterization of an offense, in making this determination the court is to look only to the elements of the offense and not to the underlying facts. "[A] witness' prior conviction should only be admissible for impeachment if the least adjudicated elements of the conviction necessarily involve moral turpitude." (*Id.,* at p. 317.)

■ Under this approach, neither simple assault, simple battery, nor even felony battery are offenses involving moral turpitude. To constitute an assault, all that is required is an attempt to commit a battery, coupled with the present ability to commit the battery. (Pen. Code, § 240; CALJIC No. 9.00 (1983 rev.).) Since the "least touching" will suffice to constitute a battery, "a simple assault does not necessarily show moral turpitude." (*People* v. *Cavazos* (1985) 172 Cal.App.3d 589, 594 [218 Cal.Rptr. 269].) Similarly, a person need not have an intent to injure to commit a battery, but only the general intent to commit the act (Pen. Code, § 242; CALJIC No. 16.140 (4th ed. 1979)); therefore, "a simple battery does not necessarily show readiness to do evil or necessarily involve moral turpitude." (*People* v. *Mansfield* (1988) 200 Cal.App.3d 82, 88 [245 Cal.Rptr. 800].) Similarly, felony battery is but a simple battery which results in serious bodily injury (Pen. Code, § 243, subd. (d); CALJIC No. 9.09 (1981 rev.)); since the use of force likely to have caused the serious bodily injury is not an element of the offense, "[i]t follows that because simple battery is not a crime involving moral turpitude, battery resulting in serious bodily injury necessarily cannot be a crime of moral turpitude because it also can arise from the 'least touching.' " (*People* v. *Mansfield, supra,* 200 Cal.App.3d at p. 88.)

Several courts have held that assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) does necessarily involve moral turpitude. (*People v. Valdez* (1986) 177 Cal.App.3d 680 [223 Cal.Rptr. 149]; *People v. Means* (1986) 177 Cal.App.3d 138 [222 Cal.Rptr. 735]; *People v. Armendariz* (1985) 174 Cal.App.3d 674 [220 Cal.Rptr. 229]; *People v. Cavazos, supra,* 172 Cal.App.3d 589; see also *People v. Elwell, ante,* p. 171 [253 Cal.Rptr. 480] [assault by means of force likely to produce great bodily injury necessarily involves moral turpitude].) A recent concurring opinion of Justice Crosby has cast some doubt, however, on the rationale underlying these decisions. (*People v. Heckathorne* (1988) 202 Cal.App.3d 458, 464 [248 Cal.Rptr. 399].)

The rationale for treating aggravated assault as a crime of moral turpitude was explained in *People v. Cavazos* as follows: "Assuming, as we must, that an assault with a deadly weapon does not require proof of a specific intent to harm another, it nevertheless does require proof of an unlawful *attempt* to inflict physical force upon another person. The jury is so instructed. (CALJIC No. 9.00 (4th ed. 1979).) Because an attempt to commit a battery requires a specific intent to commit the battery and a direct but ineffectual act done towards its commission (Pen. Code, § 664; 1 Witkin, Cal. Crimes, *op. cit. supra,* § 93, pp. 90-91) and because a deadly weapon is used to effectuate the attempted battery, it follows that the 'least adjudicated elements' of the crime of an assault with a deadly weapon involve some degree of moral turpitude. *It is the use of the deadly weapon which elevates the assault to a moral turpitude crime.*" (172 Cal.App.3d 589, 595, second italics added.) That is, use of the weapon permits the inference that the actor realized the likelihood of injuring the other person and therefore demonstrated a readiness to do evil.[1] As the court observed in *People v. Means, supra,* 177 Cal.App.3d 138, "Few would agree that an unlawful assault upon a fellow human being with a deadly weapon, indicates other than a 'general readiness to do evil.'" (*Id.,* at p. 139.)

Assuming that moral turpitude is displayed in virtually every case of an assault with a deadly weapon, there is nonetheless a disturbing analytical question with this reasoning under the rules of *Castro,* as Justice Crosby has perceptively demonstrated in *Heckathorne.* (See also *People v. Coad* (1986) 181 Cal.App.3d 1094, 1114 [226 Cal.Rptr. 386] (conc. and dis. opn. of Kline, P. J.) Under the "least adjudicated elements" standard, he asserts, the test is not whether moral turpitude is involved in most instances in which the offense is committed, but whether because of the manner in

---

[1] A violation of Penal Code section 245, subdivision (a)(1), may also occur if the assault is made "by any means of force likely to produce great bodily injury." In this context, using a means of force likely to produce great bodily injury would seem to have the same significance as using a deadly weapon. (See *People v. Elwell, supra, ante,* pp. 171, 177.)

which the offense is statutorily defined, moral turpitude must necessarily be present in every instance. "In other words, if the statute can be violated in a manner not constituting moral turpitude, it cannot be used to impeach no matter how heinous the particular circumstances of the witness's crime." (*People* v. *Heckathorne, supra,* 202 Cal.App.3d 458, 465.)

Justice Crosby argues that section 245, subdivision (a)(1) can be violated by conduct that does not reflect moral turpitude. Since a genuine but objectively unreasonable belief in the need for self-defense is not a defense to this crime, a person may be found to have committed an aggravated assault even though that person honestly believed that his or her acts were necessary to avoid serious injury at the hands of the other person. (202 Cal.App.3d at p. 468.) Committing the offense under such circumstances would involve a form of negligence, not moral depravity,[2] and therefore, the argument goes, the least adjudicated elements of the offense do not necessarily involve moral turpitude. (*Ibid.;* see also *People* v. *Coad, supra,* 181 Cal.App.3d 1094, 1119-1121 (conc. and dis. opn. of Kline, P. J.) [because one may be convicted of voluntary manslaughter despite presence of "imperfect self-defense," voluntary manslaughter should not be held necessarily to involve moral turpitude].)[3]

Unless one were to quarrel with the proposition that no moral stigma attaches to unlawful conduct that would have been lawful if the actor's honestly held motivating beliefs had been reasonable, Justice Crosby's argument seems unanswerable under the terms laid down by *Castro,* as he has construed the "least adjudicated elements" test.

However, there is a major problem with accepting this argument: it proves too much. While a genuine but unreasonable belief in the need for

---

[2] See, e.g., Hall, General Principles of Criminal Law (2d ed. 1947) pages 133-134; Hall, *Negligent Behavior Should Be Excluded from Penal Liability* (1963) 63 Colum.L.Rev. 632.)

[3] The conclusion of the dissenting opinion in *Coad,* that the least adjudicated elements of voluntary manslaughter do not involve moral turpitude, does not, however, rest simply on the proposition that that crime can be committed under unusual circumstances devoid of moral depravity. Rather, the dissent argues that because of the manner in which voluntary manslaughter is defined, conviction of that offense necessarily implies the absence of malice (181 Cal.App.3d at pp. 1116-1117), and "represents, among other things, a conclusion by the trier of fact that the defendant sustained his burden of showing that though his killing of another human being was intentional it was also either (1) objectively reasonable, or (2) induced by an honest belief that he was in mortal danger, or (3) influenced by a mental defect that rendered him incapable of comprehending the duty the law imposes and unable to harbor malice. These are not the sort of considerations ordinarily associated with an evil design or a depraved heart." (*Id.,* at p. 1118, fn. omitted.) Because a conviction of aggravated assault and most other crimes does not establish "imperfect defenses" or mitigating factors, the approach adopted in the present opinion—under which the possible presence of such factors which are not included in the elements of the offense does not negate moral turpitude under *Castro*—is not inconsistent with the analysis of either the dissent or the majority in *Coad.*

self-defense may arise only with respect to assaultive conduct, there are other beliefs which if both genuine and reasonable will excuse the commission of *any* offense. ■ Duress, for example, is available as a potential defense to any but a capital crime. (Pen. Code, § 26, subd. Six; see 1 Witkin, Cal. Crimes (1963) §§ 155-156, pp. 149-150.) The defense exists if a person engages in conduct otherwise criminal under threats and menaces, "where the threats and menaces are such that they would cause a *reasonable person* to fear that his life would be in immediate danger if he did not engage in the conduct charged" and the person does believe that his life would be so endangered. (CALJIC No. 4.40 (4th ed. 1979 rev.), italics added.) The defense of duress applies to crimes requiring specific intent (e.g., *People* v. *Graham* (1976) 57 Cal.App.3d 238 [129 Cal.Rptr. 31]; see Annot. (1980) 1 A.L.R. 4th 481, Criminal Law-Defense-Coercion) and may even be established if the fear of harm is harm to a third person. (*People* v. *Pena* (1983) 149 Cal.App.3d Supp. 14 [197 Cal.Rptr. 264].) Similarly, "a person is not guilty of a crime if he commits an act or omits to act under an honest *and reasonable* belief in the existence of certain facts and circumstances which, if true, would make such act or omission lawful." (CALJIC No. 4.35 (4th ed. 1979), italics added; Pen. Code, § 26, subd. Three; *People* v. *Vineberg* (1981) 125 Cal.App.3d 127, 135-136 [177 Cal.Rptr. 819], cert. den. (1982) 456 U.S. 945 [72 L.Ed.2d 468, 102 S.Ct. 2011].)

■ In these cases, if the actor's belief, though honestly held, is found to be unreasonable, the defense has not been established. Thus, since the conviction of any crime does not necessarily negate the possibility that the defendant acted with a genuine but unreasonable belief which, if the belief had been reasonable, would have rendered the conduct lawful, the commission of robbery, embezzlement, or forgery, to mention but a few offenses universally recognized as proper subjects of impeachment, cannot be said "necessarily" to establish moral turpitude. While the likelihood of the defendant acting under some such genuine belief is of course remote, perhaps even fanciful, it is sufficient to show that moral turpitude is not inherent in the "least adjudicated elements" of any conviction if analyzed as suggested by the concurring opinion in *Heckathorne*.

■ The same point emerges if consideration is given to the motive which prompts a person to commit an offense. The best of motives provides no defense. (Hall, General Principles of Criminal Law, *op. cit. supra,* p. 88 [". . . hardly any part of penal law is more definitely settled than that motive is irrelevant"]; 1 Witkin, Cal. Crimes, Defenses, *op. cit. supra,* § 249, p. 233.) Stealing to feed the poor is of course criminal, but whether such conduct reflects "moral turpitude" is at least open to debate. "The exclusion of motive, as not essential in *mens rea,* does not deny the importance of motive in determining the culpability ('guilt') of the defendant." (Hall, *op.*

cit. supra, p. 104; see also, Cohen, *Moral Aspects of the Criminal Law* (1940) 49 Yale L.J. 987, 1020.) If one concludes that there is no moral deficiency despite the societal need to punish certain conduct performed with commendable motives, it follows for an additional reason that moral turpitude is not inherent in the least adjudicated elements of any crime.

The same point has been made with reference to the possibility of committing an offense under a mistaken belief in the identity of one's victim; although such a mistake may not excuse the crime, under rare circumstances it may dispel the moral blame that normally accompanies the offense—as illustrated by the unusual facts of *People v. Walton* (1982) 136 Cal.App.3d 76 [186 Cal.Rptr. 18], discussed by Justice Crosby in *Heckathorne*. (202 Cal.App.3d at p. 468; compare *People v. Young* (1962) 11 N.Y.2d 274 [229 N.Y.S.2d 1, 183 N.E.2d 319].)

■ Although all of these situations are highly unlikely, they do show that the ability to imagine a set of circumstances under which a penal statute can be violated without moral fault cannot be the measure of the moral turpitude that is involved in violating that statute. If that is what is required by the least adjudicated elements test, no crime would ever involve moral turpitude. (See generally Hall, General Principles of Criminal Law, *op. cit. supra*, p. 144 ["[N]o immediate external situation, however criminal it appears to be, can of itself preclude the possibility that the relevant *mens rea* was lacking . . . ."]; Wootton, Crime and the Criminal Law (1963) p. 42 [". . . the badness even of those actions which would most generally be regarded as *malum in se* is inherent, not in the physical acts themselves, but in the circumstances in which they are performed."]) ■ Thus, reading *Castro* to preclude use of a prior conviction for the purpose of impeachment if there is any conceivable set of facts under which the offense could have been committed free of moral blame would mean that no prior conviction could ever be used for impeachment. Certainly that is not what the Supreme Court intended by its ruling in *Castro*. By making the "least adjudicated elements of the conviction necessarily involve[d]" the standard, the Supreme Court must be taken to have meant something else.

All that *Castro* should be taken to require is that from the elements of the offense alone—without regard to the facts of the particular violation—one can reasonably infer the presence of moral turpitude. This standard conforms both with the issue formulated in *Castro*, and with the holding of that very case. ■ "Paraphrasing the question to be asked," Justice Kaus there stated, "we must ask with respect to any particular felony conviction which is offered for impeachment: 'Can it be said *with substantial assurance* that the credibility of a witness is adversely affected by his having suffered this conviction?'" (*People v. Castro, supra*, 38 Cal.3d 301, 313, italics add-

ed.) The Supreme Court was not looking for a rule of absolute certainty and, indeed, no rule of relevance could ever provide it. (Compare *People* v. *Coad, supra,* 181 Cal.App.3d 1094, 1110-1111 [opn. of Smith, J.].) The offenses that were directly at issue in *Castro* were simple possession of heroin and possession for sale; the Supreme Court held that the former does not involve moral turpitude, but that the latter does. "The question here is," the court stated, "does possession of heroin for sale *necessarily* evince any character trait which can reasonably be characterized as 'immoral.'" (38 Cal.3d at p. 317, fn. 13, italics added.) In answering affirmatively, the court indicated conclusively, albeit implicitly, that for the purpose of determining the admissibility of a prior conviction for impeachment, the theoretical possibility that the crime may have been committed for a noble motive or under a mistaken belief that would have excused the offense if reasonable does not mean that the crime does not "necessarily evince" a character trait reasonably characterized as immoral.

In referring to the dictate "that moral turpitude must be found, if at all, only on the least adjudicated elements of the crime," the court in *People* v. *Armendariz, supra,* 174 Cal.App.3d 674, 681, stated that it understood the language in *Castro* "to mean that the facts underlying a prior felony conviction may not be reviewed in order to determine whether the crime involved moral turpitude." (See also, e.g., *People* v. *Mansfield, supra,* 200 Cal.App.3d 82, 87.) This is indeed the basic thrust of the rule limiting consideration to the least adjudicated elements of a prior offense.

The least adjudicated elements standard was explicitly adopted in *Castro* from "the *Finley-Crowson* line of cases." (*People* v. *Castro, supra,* 38 Cal.3d 301, 316-317; *People* v. *Crowson* (1983) 33 Cal.3d 623, 633-635 [190 Cal.Rptr. 165, 660 P.2d 389]; *In re Finley* (1968) 68 Cal.2d 389, 392-393 [66 Cal.Rptr. 733, 438 P.2d 381].) In those cases the Supreme Court was addressing itself to the manner in which to evaluate convictions in foreign jurisdictions for the purpose of applying California's former habitual offender statute (in *Finley*), and California's sentence-enhancing Penal Code section 667.5, subdivision (f) (in *Crowson*). In both cases the court held that the foreign conviction could be considered only if the elements of the offense necessary for conviction under the foreign statute are the same as the elements necessary to convict under the comparable California statute;[4] this determination must be made without reference to the facts of the particular

---

[4]Making this determination, it should be clear, is very different from determining whether the elements of a statutory violation establish moral turpitude. While it is perfectly possible to determine that the elements of statutes in two jurisdictions are the same, as indicated above, the elements of no crime necessarily establish moral turpitude if by that is meant that the crime could not conceivably be committed under circumstances devoid of moral depravity.

offense. (See also *People* v. *Jackson* (1985) 37 Cal.3d 826, 838 [210 Cal.Rptr. 623, 694 P.2d 736].) It may well be preferable to abandon this approach entirely for the purpose of determining the admissibility of prior convictions.[5] But until such time as the Supreme Court sees fit to do so, by limiting what may be considered in drawing an inference concerning the moral turpitude of a prior conviction to the minimum elements of the crime, excluding the facts of the particular offense, the rule derived from *Finley-Crowson* and the mandate of *Castro* will be satisfied.

In looking to the statutory definition of aggravated assault to determine whether a conviction of this offense could be used for impeachment, the court in *Armendariz* concluded "that the least adjudicated elements of any assault-with-a-deadly-weapon conviction are (1) the intentional commission of an act (2) with a deadly weapon, (3) the successful completion of which would probably result in injury to the person of another." (174 Cal.App.3d 674, 681-682.) While these elements do not necessarily establish moral turpitude in the sense that one could not imagine a set of facts in which moral turpitude was missing, they do support the inference of moral turpitude in the absence of an unlikely explanation by the defendant establishing some unusual motive or "imperfect defense" (i.e., some genuine but unreasonable belief which, if reasonable, would have excused the offense). That, under *Castro,* is enough. ██ Thus, as *Armendariz* and the other cases have concluded, it follows that for the purpose at hand assault with a deadly weapon must be regarded as involving moral turpitude, and that a prior conviction for this offense may be used to impeach the testimony of a witness.[6]

---

[5] The use of the abstract least adjudicated elements standard has recently been abandoned in one context and strongly criticized in another. In *People* v. *Guerrero* (1988) 44 Cal.3d 343 [243 Cal.Rptr. 688, 748 P.2d 1150], the Supreme Court overruled its prior decision in *People* v. *Alfaro* (1986) 42 Cal.3d 627 [230 Cal.Rptr. 129, 724 P.2d 1154], and held that in determining the truth of a prior conviction allegation for the purpose of enhancing a sentence under Penal Code section 667, the court is not limited to matters necessarily established by the prior conviction, but may look to the entire record of the conviction. (See *People* v. *Vasquez* (1988) 204 Cal.App.3d 1531 [252 Cal.Rptr. 331].) And in *People* v. *Patterson* (1988) 202 Cal.App.3d 165 [247 Cal.Rptr. 885] (review granted Sept. 15, 1988 (S006538)), this abstract approach was severely criticized when used to determine whether an offense involves inherently dangerous conduct for the purpose of applying the second degree felony-murder rule.

[6] In considering the acceptability of this conclusion, it is important to note that the admonition in *Castro* against going behind a prior conviction to the facts of the particular violation is addressed only to the trial court's determination to admit evidence of the prior conviction. If those rare extenuating circumstances which might negate the moral turpitude ordinarily associated with the offense are claimed to have existed, *Castro* does not preclude the defense from eliciting those facts from the witness. Arguably any such explanation in the past would have contravened Evidence Code section 787, rendering inadmissible evidence of specific instances of conduct to support as well as to attack the credibility of a witness. However, section 787 was invalidated in criminal cases by another provision of the same Victim's Bill of Rights that broadened the use of prior convictions for impeachment. (*People* v. *Adams* (1988)

■ The conclusion that assault with a deadly weapon does involve moral turpitude implicitly rejects the argument that the characterization of the offense for this purpose should correspond to the characterization of the same offense for the purpose of disciplining members of the bar. (See, e.g., *People* v. *Heckathorne, supra,* 202 Cal.App.3d 458, 466-467.) For that purpose, the Supreme Court has held that assault with a deadly weapon does not necessarily involve moral turpitude. (*In re Strick* (1983) 34 Cal.3d 891, 902 [196 Cal.Rptr. 509, 671 P.2d 1251]; *In re Rothrock* (1940) 16 Cal.2d 449, 459 [106 P.2d 907, 131 A.L.R. 226].) While the Supreme Court in *Castro* did refer lower courts to the attorney discipline cases as a source of guidance in determining which offenses involve moral turpitude (38 Cal.3d 301, 316, fn. 11),[7] there are good reasons for which the standard adopted in the attorney discipline area should not govern the characterization of the offense for the purpose of impeachment. Such differentiation does not imply that the courts sanction lower standards of ethical behavior from attorneys than from witnesses in criminal cases. Rather, the differentiation reflects the significance of the decision to bar an individual from the practice of a profession as compared to the significance, not of being convicted of a crime, but of admitting a single piece of evidence as one of many factors used to evaluate the crediblity of a witness. The distinction also reflects the very different feasibility of permitting an extended inquiry into the underlying facts of an offense in disciplinary hearings, where the facts of the offense

---

198 Cal.App.3d 10, 16-18 [243 Cal.Rptr. 580].) Moreover, section 787 has always been subject to Evidence Code section 788, which permits a prior felony conviction to "be shown by the examination of the witness." While the prosecutor may not question the witness about the underlying details of the prior conviction (*People* v. *Allen* (1986) 42 Cal.3d 1222, 1270 [232 Cal.Rptr. 849, 729 P.2d 115], cert. den. (1987) 484 U.S. 872 [98 L.Ed.2d 153, 108 S.Ct. 202]; *People* v. *Terry* (1974) 38 Cal.App.3d 432, 446-447 [113 Cal.Rptr. 233]), this restriction is for the protection of the defendant, who should be permitted to waive the protection if his explanation will tend to minimize the inference of moral turpitude otherwise deducible from the fact of conviction. (See *People* v. *Rollo* (1977) 20 Cal.3d 109, 118-119 [141 Cal.Rptr. 177, 569 P.2d 771]; *People* v. *Stewart* (1973) 34 Cal.App.3d 244, 247-248 [109 Cal.Rptr. 826], cert. den. (1974) 415 U.S. 959 [39 L.Ed.2d 574, 94 S.Ct. 1489]; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1982) § 28.8, p. 932; Evid. Code, § 780.) The admissibility of such explanatory testimony is of course subject to the discretion of the trial court under Evidence Code section 352, which may properly be exercised to limit testimony on such a collateral issue. (See, e.g., *People* v. *Hernandez* (1976) 63 Cal.App.3d 393, 404-407 [133 Cal.Rptr. 745].) However, permitting an occasional relatively brief explanation will place little burden on the trial court, and will create no delays or other problems comparable to those that would be encountered if the trial court were required to conduct a foundational hearing to determine the moral turpitude of every prior conviction offered for impeachment.

[7] The court also there referred to an annotation concerning the meaning of moral turpitude in the context of immigration law. (Annot., What Constitutes "Crime Involving Moral Turpitude" Within Meaning of §§ 212(a)(9) and 241(a)(4) of Immigration and Nationality Act (8 USCS §§ 1182(a)(9), 1251(a)(4), and Similar Predecessor Statutes Providing for Exclusion or Deportation of Aliens Convicted of Such Crime (1975) 23 A.L.R.Fed. 480.) That annotation notes that "[a]ssault with a deadly or dangerous weapon has generally been held to be a crime involving moral turpitude." (P. 527.)

are central to the outcome, as compared to criminal trials, where the facts of the crime used to impeach are not central to the issues being litigated.[8] Substantial practical burdens would be imposed on the trial courts if such an inquiry were required into the facts of every prior conviction offered for impeachment. (See *People* v. *Cavazos, supra,* 172 Cal.App.3d 589, 595; *People* v. *Armendariz, supra,* 174 Cal.App.3d 674, 682.)

■ Thus, the trial court did not err in permitting the appellant to be impeached with his prior conviction of assault with a deadly weapon.

## II., III.*

. . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied January 13, 1989, and appellant's petition for review by the Supreme Court was denied March 23, 1989.

---

[8]The same concerns would apply when a prior conviction is offered for impeachment in a civil trial.

*See footnote, *ante*, page 689.