[No. A044113. First Dist., Div. Two. Jan. 10, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERTO BAUTISTA, Defendant and Appellant.

**COUNSEL**

Steven B. Solomon and Robert K. Calhoun, Jr., under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Mark S. Howell and Sarah C. Backus, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BENSON, J.**—Roberto Bautista appeals from a judgment entered on a jury verdict finding him guilty of first degree burglary (Pen. Code, § 459). The court denied appellant's *in limine* motion to exclude his prior conviction of felony hit-and-run (Veh. Code, § 20001). The sole issue on appeal is whether the trial court erred in admitting appellant's prior felony conviction for impeachment purposes. Appellant argues that the court erred in admitting the prior conviction because that offense does not necessarily involve moral turpitude. The issue is one of first impression. We conclude that the offense of felony hit-and-run does involve moral turpitude under the prescription of *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].

*Statement of the Case*

By information filed May 16, 1988, in the San Francisco Superior Court, appellant was charged with first degree burglary (Pen. Code, § 459). Trial commenced on October 3, 1988. Appellant's counsel made an *in limine* motion to exclude appellant's prior felony hit-and-run conviction from being used for impeachment purposes. The motion was denied. The jury returned a verdict of guilty on October 6, 1988.

Judgment of conviction was entered on November 3, 1988, and appellant was sentenced to state prison for a term of four years.

Timely notice of appeal was filed on November 3, 1988.

*Statement of Facts*

On February 14, 1988, the residents of 3827-25th Street, San Francisco, reported a burglary to police. The home was ransacked and various musical instruments, hand tools, jewelry, and electrical appliances were missing. A small metal box which had been located in a drawer in the dining room had been moved. Appellant's fingerprints were found on the box.

A neighbor of the victims noticed a man standing at the corner of 25th and Dolores Streets, at approximately the time the burglary took place. The man was watching the neighbor and kept looking around. He was standing by himself next to a two-door green Plymouth Duster. The neighbor also noticed that the back of the car contained many large items including an instrument case. Although the neighbor was unable to positively identify the man as appellant, he did identify a 1973 green Plymouth Duster parked nearby.

About a month after the burglary, appellant was spotted by San Francisco Police Officer, William Marweg, driving a green Plymouth Duster. The officer served an arrest warrant for appellant on April 4, 1988. Appellant was advised of his *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) rights in both Spanish and English but waived his right to remain silent and denied committing the burglary. He stated that he had been in Mexico for the past five months. When confronted with the fact that his fingerprints had been found inside the burglarized home and that a police officer had seen him three weeks earlier, appellant still insisted that he had been in Mexico and that he had not committed the burglary.

A qualified expert in fingerprint identification stated that a fingerprint had been lifted from a metal box inside the 3827-25th Street home, and that when compared to a known sample of appellant's fingerprints, a positive identification was made. Although the expert could not unequivocally say that appellant's fingerprint had not been placed on the box up to two years earlier, he did indicate that if the box was used daily by the residents, and appellant left a fingerprint up to two years earlier, that the print probably would not be intact two years later.

Appellant stated that on February 14, 1988, he had been drinking beer at a local Mission District bar, and that another customer had offered him a cigarette. He recalled experiencing strange sensations, and then waking up in the back seat of his car two days later in Los Angeles. At that time he did not notice anything in his car which did not belong to him.

Gregory Hayner, chief pharmacist at the Haight-Ashbury Detoxification Clinic in San Francisco testified for the defense as an expert witness in the field of the effects of PCP. He testified that based upon his interview with appellant, he believed appellant had ingested PCP on February 14, 1988. On cross-examination, Dr. Hayner testified that persons under the influence of PCP are incapable of clear thoughts and have faulty judgment. He also agreed that all the acts which were accomplished by the burglar of 3827-25th Street could probably not have been accomplished by an unconscious person. In other words, appellant could not have ingested PCP, then committed a burglary, and then driven to Los Angeles and suffered amnesia.

In 1982, appellant was convicted of felony hit-and-run, Vehicle Code section 20001.[1] Prior to this trial, appellant's counsel moved, *in limine*, to exclude evidence of this prior felony conviction if offered for impeachment. The motion was denied. During direct examination, appellant admitted that he had suffered the prior conviction. The prosecutor referred to the prior conviction in his closing argument. The court instructed the jury with respect to the prior conviction under CALJIC No. 2.23.

## DISCUSSION

According to *People* v. *Castro, supra*, 38 Cal.3d 301, and subject to the trial court's discretion under Evidence Code section 352, only prior felony convictions which necessarily involve moral turpitude may be used to impeach a witness in a criminal proceeding. (*Id.* at p. 306.) The court made it clear that moral turpitude does not depend on dishonesty being an element of the felony. We are told that crimes that reveal a defendant's dishonesty, " 'general readiness to do evil,' " " 'bad character,' " or "moral depravity" do involve moral turpitude. (*Id.* at p. 315.) Therefore, the goal under *Castro* is to decide what circumstances provide "some basis—however tenuous—for inferring that a person . . . is more likely to be dishonest than a witness about whom no such thing is known." (*Ibid.*)

*Castro* also instructs the trial court to look only at the "least adjudicated elements" of the crime for which the witness was previously convicted when deciding whether a felony offered for impeachment necessarily involves or reasonably infers moral turpitude. (*People* v. *Castro, supra*, 38 Cal.3d at p. 317.) This concept, as it has been interpreted, simply means that in determining whether a previous felony involves moral turpitude the court cannot go behind the conviction and take evidence on or consider the facts and circumstances of the particular offense. Instead, the court must look to the statutory definition of the particular crime and only if the least adjudicated

---

[1] All statutory references will be to the Vehicle Code unless otherwise indicated.

element of the crime necessarily involves moral turpitude is the prior conviction admissible for impeachment purposes. (*People* v. *Statler* (1985) 174 Cal.App.3d 46, 53 [219 Cal.Rptr. 713].)

Section 20001, felony hit-and-run, provides in part that the driver of any vehicle involved in an accident resulting in injury or death to any person other than himself shall immediately stop the vehicle and shall fulfill the requirements of sections 20003 and 20004, and any person failing to stop or to comply with the requirements under such circumstances is guilty of a public offense. Section 20003 provides that the driver of any vehicle involved in an accident resulting in injury of any person shall give his name, address, registration number of the vehicle, and his driver's license number, to any person that is struck or the driver or occupants of any vehicle collided with, and shall render reasonable assistance to any person injured in the accident, including the carrying or the making of arrangements for the carrying of such person to a physician for medical treatment if it appears that treatment is necessary.

■■■ In order to be convicted of felony hit-and-run, the driver must have at least constructive knowledge that he was involved in an accident. (*People* v. *Hamilton* (1978) 80 Cal.App.3d 124, 132 [145 Cal.Rptr. 429].) Also, failure to perform any one of the acts required by section 20001, including the driver giving his name to the victim, constitutes the offense. (*People* v. *Limon* (1967) 252 Cal.App.2d 575, 578 [60 Cal.Rptr. 448].) For the purposes of the rule set forth in *Castro,* it must be determined whether the least adjudicated element of a felony hit-and-run would constitute moral depravity of any kind. In other words, would the failure of the driver involved in an injury-accident to perform any of the requirements under section 20003, i.e., failing to give his/her name, address, driver's license number, or the registration number of the car, infer moral turpitude?

Appellant argues that it is preposterous to find moral turpitude on the part of a driver involved in an accident causing injury because of failure to give his name, or any of the other requirements of section 20003. Appellant postulates that failing to give one's name to the victim of an accident could simply be the result of neglect without evil intent and therefore is morally innocent behavior. We disagree. As we have previously stated: "[T]he ability to imagine a set of circumstances under which a penal statute can be violated without moral fault cannot be the measure of the moral turpitude that is involved in violating that statute. If that is what is required by the least adjudicated elements test, no crime would ever involve moral turpitude." ■■■ We concluded that "All that *Castro* should be taken to require is that from the elements of the offense alone—without regard to the facts of the particular violation—one can reasonably infer the presence of

moral turpitude." (*People* v. *Thomas* (1988) 206 Cal.App.3d 689, 698 [254 Cal.Rptr. 15].) In *Castro,* Justice Kaus suggested we ask the question, " 'Can it be said with substantial assurance that the credibility of a witness is adversely affected by his having suffered this conviction?' " (*People* v. *Castro, supra,* 38 Cal.3d at p. 313.)

■ Appellant's argument minimizes the purpose behind these sections which is "to make complete information available at the time the accident occurs and before participants and witnesses disappear." (*People* v. *Monismith* (1969) 1 Cal.App.3d 762, 766 [81 Cal.Rptr. 879].) The statute is designed to prevent the driver of a car involved in an accident from leaving the scene without furnishing information as to his identity and to prevent him from escaping liability. "One of the duties that accompanies the right and privilege of driving a vehicle upon a public thoroughfare is to give such information." (*Ibid.*)

Appellant relies on language from *People* v. *Rocovich* (1969) 269 Cal.App.2d 489, 494 [74 Cal.Rptr. 755], to argue that "specific intent was not a necessary element of [section 20001]" and, therefore, violation of this section does not give rise to an inference of moral turpitude. This reasoning is flawed. Indeed, knowledge is the key element to a conviction for this offense, not the intention to do the act. *Rocovich* involved a defendant who was intoxicated at the time of the accident involving an injury, and conviction hinged on a determination of whether or not the defendant had the requisite knowledge of the accident.

■ It is more than likely that one who is involved in an injury-accident and leaves the scene before giving the required identifying information is seeking to evade civil or criminal prosecution. At the very least then, a person convicted of violating section 20001 has exhibited an intent and purpose of concealing his identity and also his involvement in an injury-accident. One can certainly infer that such a mental state indicates a "general readiness to do evil" or moral turpitude.

Our determination that the trial court correctly ruled that appellant's prior felony conviction could be used for the limited purpose of impeachment makes discussion of the second issue, prejudicial error, unnecessary.

## CONCLUSION

We affirm the decision of the trial court.

Peterson, J., concurred.

**KLINE, P. J.,** Concurring.—Reiterating what we said in *People v. Thomas* (1988) 206 Cal.App.3d 689 [254 Cal.Rptr. 15], the majority states that all *People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111] should be taken to require " 'is that from the elements of the offense alone— without regard to the facts of the particular violation—one can *reasonably infer* the presence of moral turpitude.' " (Maj. opn., *ante*, at pp. 6-7, italics added, quoting *People v. Thomas, supra*, at p. 698.) This test, I think it must forthrightly be acknowledged, is difficult to square with the idea that "a witness' prior conviction should only be admissible for impeachment if *the least adjudicated elements* of the conviction *necessarily* involve moral turpitude" (*Castro, supra*, at p. 317, italics added) which is the principle for which *Castro* is widely understood to stand.

I accept the "reasonable inference" twist to the *Castro* test because, as we explained in *Thomas,* the least adjudicated elements analysis cannot be applied literally without producing a *reductio ad absurdum.*[1] Appellant's contention that the least adjudicated elements of felony hit-and-run do not necessarily involve moral turpitude—which, unlike the majority, I think is correct—is not dispositive under the analysis we adopted in *Thomas.* The standard prescribed in *Castro* is so manifestly unworkable that it cannot be taken seriously by the trial and appellate courts of this state, which have, in effect, revised the test. (See, e.g., *People v. Coad* (1986) 181 Cal.App.3d 1094 [226 Cal.Rptr. 386].) Practical considerations and the futility of resistance persuade me to join in that enterprise.[2]

Considering that a person cannot be convicted of felony hit-and-run without knowledge on his part that an accident has occurred resulting in injury to another (*Garabedian v. Superior Court* (1963) 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590]; *People v. Hamilton* (1978) 80 Cal.App.3d 124, 132 [145 Cal.Rptr. 429]), the inference that the offender intended to deceive, though not compelled, is certainly reasonable. Such an inference supports the conclusion that a person convicted of this felony is more likely to testify falsely than a witness about whom no such thing is known. It is on

---

[1] "[S]ince the conviction of any crime does not necessarily negate the possibility that the defendant acted with a genuine but unreasonable belief which, if the belief had been reasonable, would have rendered the conduct lawful, the commission of [numerous] offenses universally recognized as proper subjects of impeachment[ ] cannot be said 'necessarily' to establish moral turpitude." (*People v. Thomas, supra*, 202 Cal.App.3d 689, 697.)

[2] In my dissenting opinion in *People v. Coad, supra*, 181 Cal.App.3d at pages 1114-1130, (dis. opn. of Kline, P. J.) I took the position that the offense of voluntary manslaughter does not necessarily involve "moral turpitude" within the meaning of *People v. Castro, supra.* Though, in my view, this conclusion is the proper result of strict application of the *Castro* test, it is not warranted by the reformulation of *Castro* we fashioned in *People v. Thomas, supra*. Though, for this reason, I abandon the position I took in *Coad*, I continue to believe that the incorporation into the criminal law of the moral turpitude standard will corrupt, not clarify, the criminal law of this state. (*Coad, supra*, at p. 1130, dis. opn. of Kline, P. J.)

this basis that I agree with my colleagues that appellant's credibility was properly impeached and concur in the judgment.