[EDITORS' NOTE: CASE DELETED BY ORDER DATED AUGUST 18, 2010.]
* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.
OPINION
A jury found defendant Bansa Douangpanya guilty of assault with a deadly weapon. The court sentenced him to three years in state prison.
On appeal, defendant contends the trial court erred when it instructed the jury that his impeachment priors involved "moral turpitude" and defined that phrase as "a readiness to do evil." He also contends defense counsel's failure to object to the trial court's decision to instruct the jury regarding moral turpitude constituted ineffective assistance of counsel. We affirm.
 FACTUAL AND PROCEDURAL BACKGROUND
A detailed discussion of the facts is not necessary to the resolution of the issues on appeal. Suffice it to say on the early morning of February 10, 2008, a fight broke out on the sidewalk in front of a bar and dance club in downtown Sacramento. In the midst of fisticuffs between several persons, defendant approached one of the participants, Gustavo Vieira, from behind a parked car, carrying a beer bottle in his hand. He raised the bottle and swung it at Vieira, hitting him in the head and breaking the bottle. Defendant immediately backed away and moved onto the street, where off-duty police officer Joe Alioto (who was employed as a security guard) quickly intercepted him and placed him in handcuffs.
Defendant was charged with a single count of assault with a deadly weapon. The information alleged the offense was a serious felony within the meaning of Penal Code[1]
section 1192.7, subdivision (c)(23), because defendant personally used a dangerous and deadly weapon, and further alleged that defendant committed the offense while on felony probation (§ 1203, subd. (k)).
On the eve of trial, defendant's counsel made the following comment regarding the use of defendant's two prior convictions for impeachment purposes: "If my client were to testify, do you agree that both of these are felony convictions that involve moral turpitude? [¶] However, with regard to the second conviction, the [section] 245[, subdivision](a)(1), I would be seeking — or asking the Court to sanitize[2] that since it is, in fact, the same offense that my client is currently charged with." The court, after conducting *Page 609 
an analysis, concluded defendant's two priors — one for receipt of stolen property (§ 496, subd. (a)) and one for assault with a deadly weapon (§ 245, subd. (a)(1)) — were crimes of moral turpitude. Pursuant to defense counsel's request, the court "sanitized" both priors by identifying them generically as felony convictions, requiring that any inquiry made be, "Did you suffer a felony conviction in Sacramento County in the year 2003 and/or the year 2005?" The following colloquy occurred between the prosecutor, Aaron Miller, and the court:
"MR. MILLER: I would request that because the reason for their admission would be to reflect on the defendant's credibility and the jury's ability to determine if he's telling the truth, I would ask that the language include a reference to moral turpitude.
"THE COURT: That's fine. No problem.
"MR. MILLER: In other words, the felony involving moral turpitude.
"THE COURT: So the inquiry would be, `Did you suffer a felony conviction of moral turpitude in Sacramento County in the year 2003, in the year 2005?'"
The jury found defendant guilty of the charged offense. In a bifurcated proceeding, the court found the felony probation allegation true.[3] The court denied defendant's request to reduce the charge to a misdemeanor and sentenced him to the middle term of three years in state prison, awarding him credit for time served prior to sentencing.
Defendant filed a timely notice of appeal.
 DISCUSSION I Reference to Prior Convictions As Involving Moral Turpitude
Defendant contends the trial court erred by informing the jury in response to defendant's request that defendant's prior crimes involved moral turpitude and by defining moral turpitude according to People v. Castro (1985) *Page 610 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111] as "a readiness to do evil." He claims that, in doing so, the court predisposed the jury to see him as an "evil" man.
At trial, defendant was asked on cross-examination: "[Y]ou were convicted in 2003 of a felony involving moral turpitude, right?" Defendant responded, "Yes." Defendant was also asked, "Oh, again, in 2005 you were convicted of another felony involving moral turpitude, weren't you?" Defendant responded, "I believe so, yes."
Prior to retiring to deliberate, one of the jurors asked the court: "Definition. [¶] Mr. Miller had mentioned moral turpitude. Can you give us a definition?" The court conferred with counsel outside the presence of the jury, [4] and returned with the following definition: "In considering the credibility of the defendant's testimony, the term moral turpitude refers to a crime that reflects a readiness to do evil."
Thereafter, while the jury deliberated, the court memorialized on the record what had taken place during the earlier in-chambers discussions. The court explained that it had adopted the definition of moral turpitude from theCastro case. The court also referred back to discussions prior to the in limine rulings, noting that defendant requested that the prior convictions be "sanitized" such that reference would only be made to the offenses as crimes of moral turpitude. The court stated, "I kind of put the defense on the horns of a difficult dilemma. And I think — I don't mean to speak for you, Ms. Mendez [(defense counsel)], but my impression at the time was that you opted to couch the two offenses as generic crimes of moral turpitude rather than have the specifics of the offenses be put before the jury, and in particular because of the [Evidence Code section] 352 concern of similar prior conviction to the one that is being prosecuted in this case. That is what I did and that is why I did it."
Defense counsel stated as follows: "As I indicated in chambers, I do have essentially a [section] 352 objection to the definition that the Court provided for moral turpitude, that it is a readiness to do evil or involves crimes that display a readiness to do evil. [¶] I am not disputing that there is case law supporting that definition, I just believe that the term `readiness to do evil' and specifically `evil' as a term has some very emotional connotations for certain people, and could mean such a variety of things that it is a highly provocative term, and I object to its use. [¶] My suggestion was to use *Page 611 
something that more reflected dishonesty or something of that nature. We never really got to the finite points of it. [¶] I would also simply state that if I had known that the jury would be provided with the term `readiness to do evil' as a — as how moral turpitude was defined — that potentially could have affected my advice to my client as to whether or not he should testify. I can't say for certain at this point. Obviously I'm going back in time and thinking about it. I don't know if that would have affected his decision to testify. But at the time that it was made, I obviously consider the Court's rulings on what the jurors will be allowed to hear with regard to his prior convictions. And at that point in time, my understanding was that they would hear that they were crimes of moral turpitude, without further elaboration or definition. And I acknowledge things can always change potentially in trials as they go along, but I just wanted to make that clear."
The law is clear. "Any prior felony conviction that `necessarily involve[s] moral turpitude' is admissible to impeach a witness's testimony. (People v. Castro[, supra,] 38 Cal.3d 301, 306 . . . (Castro).)" (Peoplev. Feaster (2002) 102 Cal.App.4th 1084, 1091
[125 Cal.Rptr.2d 896].) "`"Moral turpitude" means a general "`readiness to do evil'" [citation], i.e., "an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellowmen, or to society in general, contrary to the accepted and customary rule of right and duty between man and man." [Citations.] Castro makes no attempt to list or define those felonies which involve moral turpitude, but it makes clear that moral turpitude does not depend on dishonesty being an element of the felony. "[I]t is undeniable that a witness' moral depravity of any kind has some `tendency in reason' [citation] to shake one's confidence in his honesty." [Citation.]'" (People v. Sanders (1992)10 Cal.App.4th 1268, 1272 [13 Cal.Rptr.2d 205], quotingPeople v. Mansfield (1988) 200 Cal.App.3d 82, 87
[245 Cal.Rptr. 800].)
As a preliminary matter, defendant erroneously claims that the issue of whether his prior felony convictions involved moral turpitude was improperly submitted to the jury. (People v.Gray (2007) 158 Cal.App.4th 635 [69 Cal.Rptr.3d 876].) He is wrong. Unlike in Gray, the issue was not submitted to the jury. The trial court simply sanitized his prior felonies at his request as felonies involving moral turpitude. We find no fault in that determination, as "it is well settled that assault with a deadly weapon is a crime of moral turpitude [citations]." (People v. Elwell (1988)206 Cal.App.3d 171, 175 [253 Cal.Rptr. 480].)
Defendant opened up the issue of what moral turpitude means by requesting the priors be "sanitized" and agreeing to the terminology. It is not *Page 612 
particularly surprising that members of the jury were not clear what "moral turpitude" meant. After conferring with counsel, the court provided the jury with a correct definition of moral turpitude as "a readiness to do evil," a definition consistent with that provided by this state's highest court inPeople v. Castro, supra, 38 Cal.3d at page 315.
Defendant now claims the definition given by the court allowed the prosecution to introduce evidence of his prior crimes as evidence of his character for violence, leading the jury to believe he was "not only criminally predisposed, he was evil." We disagree. The jury was well advised that evidence of defendant's prior felonies involving moral turpitude was relevant only as to defendant's credibility. The trial court instructed the jury with CALCRIM No. 226 as follows: "You alone must judge the credibility or believability of the witnesses. . . . [¶] In evaluating a witness' testimony, you may consider anything that reasonably tends to prove or disprove the truth or accuracy of that testimony. Among the factors you may consider are: . . . [¶] Has the witness been convicted of a felony? . . ." The court also instructed the jury with CALCRIM No. 316 as follows: "If you find that a witness has been convicted of a felony, you may consider that fact only in evaluating the credibility of the witness' testimony. The fact of a conviction does not necessarily destroy or impair a witness' credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."
In closing statements, the prosecution explained that defendant's two prior felonies involving moral turpitude "directly reflect on his ability to take that stand and tell you the truth, that's why you hear about those felonies." Counsel reiterated that the prior felonies "reflect on [defendant's] ability to be truthful with you when he takes the stand." Defense counsel argued that the law allows the jury to consider the fact of the prior felonies "only in evaluating the credibility of the witness's testimony. The fact of a conviction does not necessarily destroy or even impair a witness's credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable." Counsel went on to explain that it was up to the jury to decide whether defendant's felony convictions "make him a credible witness or not a credible witness."
There was no error.[5] *Page 613 
 II Ineffective Assistance of Counsel
Defendant also contends his trial counsel rendered prejudicial ineffective assistance by failing to object to the trial court's decision to inform the jury that defendant's prior crimes involved moral turpitude.
"A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome." (People v. Ochoa
(1998) 19 Cal.4th 353, 414 [79 Cal.Rptr.2d 408, 966 P.2d 442].)
Defendant claims the language was "not necessary, because it was improper," and that his counsel "should have foreseen that, having put a legal term of art such as `moral turpitude' before the jury, the trial court would be forced to define it for the jury in lay terms as it defines every other legal term of art." He argues his counsel should have foreseen that the definition, taken from Castro, "would not be a good one."
Defendant provides no authority, nor are we aware of any, to support his claim that inclusion of the moral turpitude language was in any way improper.
While in hindsight, appellate counsel for defendant may conclude the strategy of "sanitizing" the prior convictions was not a correct tactical choice, it was not an uncommon or improper one. There was no ineffective assistance of counsel.
 III Presentence Credits*
The recent amendments to section 4019 do not operate to modify defendant's entitlement to credit, as he was required to register as a sex offender, committed for a serious or violent felony, and/or had a prior conviction(s) for a serious or violent felony. (§ 4019, subds. (b)(1), (2) (c)(1), (2); Stats. 2009, 3d Ex. Sess., ch. 28, § 50.) *Page 614 
 DISPOSITION
The judgment is affirmed.
Blease, Acting P. J., and Nicholson, J., concurred.
[1] AM further statutory references are to the Penal Code.
[2] The practice of requesting that prior convictions be "sanitized" is not uncommon and well intentioned when accepted by the court but as is shown below, it often makes more sense simply to refer to a prior conviction as what it in fact is.
[3] The court also found, by a preponderance of the evidence, that defendant violated probation in People v.Douangpanya (Super. Ct. Sac. County, 2005, No. 04F07579) and People v. Douangpanya (Super. Ct. Sac. County, 2005, No. 05T01708).
[4] The discussion was not reported by a court reporter.
[5] This conclusion also disposes of defendant's argument the court's definition of moral turpitude violated his right to due process because it suggested to the jury that he had a "propensity" to commit terrible crimes.
* See footnote, ante, page 606. *Page 615