Filed 7/30/13  P. v. Burney CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C069797 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F05012) |
| v. | |
| DONALD BURNEY, | |
| Defendant and Appellant. | |

A jury convicted defendant Donald Burney of felony driving under the influence (DUI) of an alcoholic beverage (Veh. Code, §§ 23152, subd. (a), 23550.5) and felony driving with a blood-alcohol content of 0.08 percent or above, having previously been convicted three times within 10 years of DUI (Veh. Code, §§23152, subd. (b), 23550.5). The defendant admitted that the prior conviction allegations were true.  The trial court sentenced him to four years in prison.

Defendant was cross examined regarding two prior felony convictions involving moral turpitude.  During deliberations, the jury asked for a definition of "moral turpitude" even though the phrase did not appear elsewhere in the instructions.  The trial court, at the urging of defense counsel, told the jury that a crime of moral turpitude was one that

1

related to witness credibility. Defendant argues the trial court should have defined moral turpitude for the jury.

We shall conclude any error was invited, the instruction given was a correct statement of the law, and defendant was not prejudiced. We shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Officers Mark Riffie and Steve Rutledge were on patrol around 10:00 p.m. when they noticed a vehicle on the right shoulder of Interstate 80 that had its emergency flashers activated. As Officer Riffie approached the vehicle, he saw defendant exit the front driver's seat of the vehicle. Defendant told Riffie that "his vehicle had just died and he was about to call Triple A." Riffie touched the hood to determine how long the vehicle had been there, and found the hood warm to the touch. Defendant said he had been at that location approximately two minutes. There were no other individuals around or in the vehicle.

As Officer Riffie spoke to defendant he noticed a strong odor of alcohol and that defendant had red and watery eyes. Defendant swayed when he stood. His speech was often slurred. Riffie asked for defendant's license, but defendant said he did not have one, and upon checking, Riffie discovered that defendant's driving privilege had been suspended. A records check of the vehicle revealed that it was registered to Celia Trevino, defendant's girlfriend.

Defendant told Officer Riffie he had driven to that location, and he did not have any passengers when he drove to the location. He said he had not consumed any alcohol since arriving at the location. He said he had half of a 24-ounce beer earlier in the afternoon, around 5:00 or 6:00 p.m.

Officer Riffie conducted field sobriety tests on defendant. Defendant did not pass the field sobriety tests. Riffie had defendant blow into a preliminary alcohol screening device. It showed defendant had a blood-alcohol level of 0.183 at 10:15 p.m. A second test taken at 10:17 p.m. showed the same result. Riffie arrested defendant and took him

2

to jail.  Riffie administered a breath test at jail.  The results of the breath test showed that defendant had a blood alcohol level of 0.16 at 11:42 p.m., and the same level at 11:47 p.m.

While he was in jail, defendant conducted two visits with his cousin which were recorded and played for the jury.  In the first recording, defendant told his cousin that he had been coming home when his truck broke down.  He said while he was on the side of the road he looked in his glove box, but found he had left his wallet so could not call AAA.  He said he called Trevino to tell her to bring his wallet, but before she answered, the highway patrol showed up.  When asked whether he had been in the car or the truck, defendant answered that he "just left the car at her house and took the truck . . . ."  Defendant said, "it's a blessing cuz, you know, I shouldn't have been out there, you know, like that, but the only thing that dang car broke down, I was on my way home."

Defendant and his girlfriend, Trevino, both testified at trial.  They both testified that Trevino had been driving when the truck broke down.  They said Trevino called her daughter to pick up Trevino so Trevino could go back to her house to pick up the AAA card, which was in defendant's wallet at Trevino's apartment.  They testified Trevino had called her daughter around 9:00 or 9:30 p.m., and Trevino testified her daughter picked her up around 10:00 p.m.

## DISCUSSION

"Any prior felony conviction that 'necessarily involve[s] moral turpitude' is admissible to impeach a witness's testimony.  [Citation.] Moral turpitude is defined as the 'general readiness to do evil.' [Citations.]"  (*People v. Feaster* (2002) 102 Cal.App.4th 1084, 1091, quoting *People v. Castro* (1985) 38 Cal.3d 301, 306, italics omitted.)

The prosecutor made an in limine motion to admit defendant's two prior felony convictions for DUI for the purpose of impeachment in the event defendant testified.  At the hearing on the motion, defense counsel agreed that the convictions were both moral turpitude convictions about which defendant could be questioned.  However, counsel

3

requested that the questioning be sanitized "so as to not give the appearance that [defendant] had been convicted of a DUI as though it may be prejudicial to him and the jury may take it as a propensity to commit a further DUI in this case."

The prosecutor agreed to sanitize the questioning so that it would not be apparent to the jury that defendant had previously been convicted of a DUI, and suggested defendant could be asked if he had been convicted of a felony involving moral turpitude. Defense counsel stated he had "[n]o issue with that." The trial court granted the prosecution's motion to admit the prior convictions for impeachment, and the defendant's request to sanitize the nature of the convictions.

Thereafter, the prosecutor asked defendant if he had been convicted of a "felony offense involving moral turpitude on November 18th, 2005?" Defendant responded, "What is moral turpitude?" Counsel approached the bench. When questioning resumed, the prosecutor asked, "Isn't it true that you were convicted of a felony crime involving moral turpitude in Sacramento County on November 18th, 2005" and "of a separate felony crime involving moral turpitude on July 30th, 2009?" Defendant responded, "Yes, it is."

The trial court instructed the jury that in evaluating a witness's testimony it could consider whether the witness had been convicted of a felony. During deliberations, the jury requested the "definition of moral turpitude." The prosecutor argued the term should be defined as "a readiness to do evil," the definition set forth in *People v. Castro* (1985) 38 Cal.3d 301, 314-315. The prosecutor allowed he would be willing to change the word "evil" to "wrong" if defense counsel wanted, but argued the court should not simply point the jury back to the instructions.

Defense counsel stated that there had been no discussion about including a jury instruction to define moral turpitude, nor would such an instruction have been appropriate. He argued that the correct way to answer the jury was to refer them back to the witness credibility instruction. The court stated: "I don't think that there is a dispute

over what the definition is under the law of the crime of moral turpitude." Defense counsel agreed. The court continued: "The question is whether it's an appropriate instruction in our particular case. That's really the thrust of it."

The trial court responded to the jury's question with the following: "A crime of moral turpitude is an offense that is relevant to witness credibility. The court refers the jury back to Jury Instruction 226, which includes certain factors that the jury may consider in evaluating a witness's testimony."

Defendant argues the court erred when it failed to adequately respond to the jury's request for a definition of moral turpitude.

We conclude this is a case of invited error. Furthermore, the instruction given was not incorrect, and defendant cannot show that he was prejudiced by the instruction because it inured to his benefit.

Invited error may be found "only if counsel expresses a deliberate tactical purpose in suggesting, resisting, or acceding to an instruction . . . ." (*People v. Wickersham* (1982) 32 Cal.3d 307, 332, disapproved on another point in *People v. Barton* (1995) 12 Cal.4th 186, 201.) The purpose of this rule is so that an appellate court can be certain that counsel acted intentionally. (*People v. Cooper* (1991) 53 Cal.3d 771, 830.) The record must show "only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it. . . . [The record] need not additionally show counsel correctly understood all the legal implications of the tactical choice." (*Id.* at p. 831.)

In this case defense counsel specifically stated it would agree to the court's proposed response, which was to refer the jury back to the witness credibility instruction, but that it would be inappropriate to instruct the jury on the meaning of moral turpitude. Clearly, defense counsel made a conscious, deliberate tactical choice between having the instruction and not having it.

In any event, there was no error. The jury was essentially told that defendant had been convicted of crimes of moral turpitude, that a crime of moral turpitude was one that was relevant to his credibility, and that it could use such convictions as a factor in determining defendant's credibility. This was not an incorrect statement of law. (See *People v. Harris* (2005) 37 Cal.4th 310, 337 ["Past criminal conduct involving moral turpitude that has some logical bearing on the veracity of a witness in a criminal proceeding is admissible to impeach . . . ."].)

Finally, the instruction was not prejudicial. Although defendant does not explain what instruction the jury should have been given, the only instruction being argued was one that would have told the jury he had been convicted of a crime showing a readiness to do evil. An instruction which merely told the jury that defendant had admitted he was guilty of a felony that was related to his credibility was less damaging to his defense than one that told the jury he admitted he was guilty of a felony demonstrating a readiness to do evil. An instruction that inured to his benefit, even if error, is not cause for reversal. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 535.)

DISPOSITION

The judgment is affirmed.


     BLEASE     , Acting P. J.


We concur:


     HULL     , J.


     MAURO     , J.


6