Filed 4/3/26  P. v. Brown CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E084216 |
| v. | (Super.Ct.No. BAF2300552) |
| LATASHA LASHAWN BROWN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr., Judge. Affirmed in part, vacated in part, and remanded with directions.

Arielle Bases, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Latasha Lashawn Brown of attempted voluntary manslaughter, assault with a deadly weapon, and willfully inflicting corporal injury on her coparent,

1

John Doe. (Pen. Code, §§ 192, subd. (a), 245, subd. (a)(1), 273.5, subd. (a); unlabeled statutory citations refer to this code.) Brown argues that the trial court erred by (1) excluding certain evidence regarding PCP, (2) admitting evidence of her 18-year-old convictions for child abuse, and (3) denying her motion to dismiss prior strike convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). We agree with Brown that the court applied an incorrect legal standard when it decided the *Romero* motion, so we vacate her sentence and remand for the court to reconsider the *Romero* motion. We affirm the judgment in all other respects.

BACKGROUND

I.     *Trial evidence and verdict*

Doe has known Brown for over 20 years. They had a child together who died in 2015, and their relationship was friendly. Brown came over to Doe's apartment one afternoon in April 2023. People were gathered in the courtyard of the complex. Brown started a fight with one woman, tried to hit a neighbor with a bottle, threw chairs, flipped over a barbecue grill, and was "[c]hasing everybody" around. The neighbor is Doe's friend of 30 years. The neighbor said that Brown was acting "crazy" and angry. He thought that she was on PCP "or something," because no one "in a regular state" would "act like that." The neighbor also thought that Doe was on PCP, but Doe testified that he had not taken the drug that day. The neighbor did not actually see Brown or Doe ingest the drug.

Brown was bleeding from a cut on her forehead, so Doe told her to go inside and clean the cut. She went inside his apartment "in a rage" and grabbed sharp kitchen

2

knives. She started throwing his belongings and cutting them with a knife. Doe tried to prevent her from going back outside, and she attacked him with the knife. Brown said something like, "'You dead, I'm going to kill you, you're dead.'" Doe did not fight back. She cut his palm and punctured one of his lungs, and he collapsed into unconsciousness. He did not remember anything after that.

Responding officers found Doe unresponsive and lying in the hallway. He had blood and small puncture wounds all over his body, including on his chest, abdomen, arms, hands, and legs. He also had a laceration on his hand. They found Brown lying in the kitchen. She was conscious but very slow to respond, and she had a large laceration on her forehead. Officers found a carving fork with blood on it roughly four feet from her. The kitchen and living room were in disarray. Things were out of place, tipped over, or broken, and there was blood and broken glass on the kitchen floor.

Doe was hospitalized for four months, and he spent another four months in a rehabilitation facility relearning how to walk. The trauma surgeon who treated Doe, Dr. Andrew Nguyen, remembered Doe's case because of his unusual injuries. Doe had "many dozens" of small stab wounds, so numerous that they were difficult to count. Both of Doe's lungs were collapsed, and surgeons had to place chest tubes on both sides of his chest.

Doe's urine tested positive for PCP upon his admission to the hospital. According to Dr. Nguyen, a positive urine test does not necessarily mean that someone ingested PCP that day. PCP can remain in a person's system for four to five days after ingesting it.

Brown testified in her own defense. She said that she had arranged to meet someone at Doe's apartment, and he let her in so that she could wait for that person. Doe stayed outside with his friends. After 15 to 20 minutes, Doe returned and was acting differently. He was "roaring" like a lion and growling at her. She asked him if he had been smoking "sherm," or PCP, because he smelled like the drug. She tried to leave, and he grabbed her and hit her in the head with his fist. She pushed him away and fought back, and two of Doe's friends came in. She grabbed a steak knife or carving fork to defend herself. Doe and his friends began kicking her, causing her to fall to the floor. She stabbed all three of them. She was trying to protect herself from Doe in particular, who "kept coming and kept coming." She noticed that she had a cut on her face and "got real angry." Brown denied that she fought with a woman outside. She claimed that she did not fight with anyone outside that day.

Brown said that she lost three teeth in the attack, and the cut on her forehead required 50 stitches. She also had a broken nose, swelling on her face, and bruises on her arm, head, neck, and chest. She was taken to the hospital that day, but she was not admitted.

On cross-examination, Brown testified that in 2006, she was convicted of child abuse causing great bodily injury on a child under the age of five. She was also "convicted of using a deadly weapon." She could not recall whether it was one or two child abuse convictions. In addition, she had 2006 convictions for possession of a firearm by a felon and welfare fraud.

4

In April 2024, the jury found Brown not guilty of attempted murder.  But the jurors found her guilty of attempted voluntary manslaughter, assault with a deadly weapon, and willfully inflicting corporal injury on her coparent, Doe.  (§§ 192, subd. (a), 245, subd. (a)(1), 273.5, subd. (a).)  The jurors also found that Brown (1) personally used a deadly and dangerous weapon in connection with the attempted voluntary manslaughter and domestic violence counts, and (2) personally inflicted great bodily injury in connection with all three counts.  (§§ 12022, subd. (b)(1), 12022.7, subd. (e).)

II.    *Prior conviction allegations and sentencing*

The court found that Brown had two prior serious felony convictions—a 1994 conviction for criminal threats (§ 422) and the 2006 conviction for child abuse causing great bodily injury (§§ 273a, subd. (a), 12022.7, subd. (d)).  (§ 667, subd. (a).)  The court also found that Brown had three prior strike convictions under the three strikes law, consisting of those same convictions plus another 2006 conviction for child abuse causing great bodily injury (§§ 273a, subd. (a), 12022.7, subd. (a)).  (§ 667, subds. (b)-(i).)

Brown moved to dismiss her prior strike convictions under *Romero* and section 1385.  The court did not dismiss either of the 2006 strikes but dismissed the 1994 strike.  (We discuss Brown's *Romero* motion in more detail in part III of the Discussion, *post*.)  The court also dismissed both of the prior serious felony enhancements.  The court sentenced Brown to 25 years to life in prison, plus a determinate term of five years.

5

DISCUSSION

## I.    *PCP evidence*

Brown argues that the court erred by excluding certain evidence about PCP that she attempted to elicit from one of the responding officers. She contends that there was a sufficient showing qualifying the officer as an expert on the effects of PCP. She also argues that the exclusion of the officer's anticipated testimony violated her federal constitutional right to present a defense. The arguments lack merit.

### A.    *Additional background*

During cross-examination of the responding officer, defense counsel asked the officer whether he had any training on dealing with someone on PCP. The officer did not have any such training, but he had experience dealing with someone on PCP. Defense counsel asked the officer to describe "what that's like, dealing with somebody on PCP." The officer replied: "Very erratic. They have a sense of kind of like super strength. It's kind of hard to get them to listen or talk to you. It's just very erratic behavior and, I guess, high emotion." Counsel then asked if the officer had ever fought someone on PCP, and the officer said, "Yes." The People objected at that point, and the court sustained the objection on relevance grounds.

The court later permitted defense counsel to make a record regarding the sustained objection. Counsel argued that there was evidence that Doe was on PCP, and counsel expected Brown to testify that she thought Doe was on PCP. He also expected her to testify that Doe "kept coming at her and coming at her." Counsel expected the officer to say "that people who are on PCP, because it is an anesthetic, do not feel pain and are able

6

to keep coming and coming at you while you are hitting them, fighting them while you are trying to get them under control." Counsel argued that the evidence was critical to Brown's claim of self-defense.

The court ruled that there was not a sufficient foundation establishing that the officer was an expert on the effects of PCP or any other drug. In addition, the court concluded that any experience the officer had fighting someone on PCP was not relevant, because he did not fight Brown or Doe.

Dr. Nguyen later testified about the effects of PCP. The doctor had studied the effects in the course of his medical training. The drug can cause people to hallucinate or can alter their mental state. PCP is not an anesthetic. The doctor did not "have a specific answer" for how a person on PCP reacts to pain. He explained: "I guess pain is such a generic stimulus. People generally in pain could have tachycardia. They can voice their discomfort. Their blood pressure can be abnormally high."

B. *Analysis*

"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates. Against the objection of a party, such special knowledge, skill, experience, training, or education must be shown before the witness may testify as an expert." (Evid. Code, § 720, subd. (a).) "The qualification of expert witnesses, including foundational requirements, rests in the sound discretion of the trial court. [Citations.] That discretion is necessarily broad: 'The competency of an expert "is in every case a relative one, i.e. relative to the topic about which the person is asked to make

7

his statement." [Citation.]' [Citation.] Absent a manifest abuse, the court's determination will not be disturbed on appeal." (*People v. Ramos* (1997) 15 Cal.4th 1133, 1175 (*Ramos*).)

The court did not abuse its discretion by concluding that the officer was not qualified as an expert on the effects of PCP. The officer testified that he had no training on dealing with people under the influence of PCP. He had fought someone under the influence of the drug and had experience dealing with someone under the influence of the drug. But there was no showing regarding the number of such encounters or any other details regarding those encounters. (See *Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1115 ["The foundation required to establish the expert's qualifications is a showing that the expert has the requisite knowledge of, or was familiar with, or was involved in, a sufficient number of transactions involving the subject matter of the opinion"].) It could have been one encounter or only a few encounters. As the proponent of the excluded testimony, Brown had the burden of establishing the officer's qualifications. Defense counsel's offer of proof said nothing about the officer's qualifications. Nor did counsel request any further proceedings to establish the officer's qualifications. On this record, the court did not abuse its discretion by determining that the officer was not qualified as an expert.

Brown contends that the exclusion of the officer's anticipated testimony violated her federal constitutional right to present a defense, because it was "highly relevant" to her claim of reasonable self-defense. But generally, the routine application of foundational requirements governing expert testimony does not violate the constitutional

right to present a defense.  (*Ramos*, *supra*, 15 Cal.4th at pp. 1175-1176.)  "[O]nly evidentiary error amounting to a complete preclusion of a defense violates a defendant's federal constitutional right to present a defense."  (*People v. Bacon* (2010) 50 Cal.4th 1082, 1104, fn. 4.)

The court's ruling excluding the officer's testimony did not amount to a complete preclusion of Brown's self-defense theory.  The officer testified that someone on PCP would be "[v]ery erratic" and would have "a sense of kind of like super strength.  It's kind of hard to get them to listen or talk to you."  Dr. Nguyen also testified that PCP can cause hallucinations or an altered mental state.  Brown testified that Doe was growling at her, committed an unprovoked attack on her, and "kept coming and kept coming" at her. The neighbor and Brown both thought that Doe was under the influence of PCP, and Doe's urine tested positive for the drug.  All of that evidence permitted defense counsel to argue in closing that Brown was acting in lawful self-defense.  Accordingly, there is no merit to the claim that the court's ruling completely precluded her self-defense theory.

For these reasons, the court did not err by excluding the officer's testimony about fighting someone under the influence of PCP.

II. *Evidence of prior convictions*

Brown argues that the court erred by failing to exclude evidence of her 2006 child abuse convictions, because the convictions were "particularly prejudicial" under Evidence Code section 352.  We disagree.

Brown has prior convictions for felony child abuse with enhancements for personally inflicting great bodily injury and personally using a deadly or dangerous

weapon. (§§ 273a, subd. (a), 12022, subd. (b)(1), 12022.7, subd. (a).) She moved in limine to exclude evidence of the convictions. The People argued that the convictions were admissible as impeachment evidence if she chose to testify. They noted that she was sentenced to 13 years in prison for the offenses. The court denied Brown's motion, ruling that the convictions involved moral turpitude, went "straight to the heart of her credibility," and were not "too remote" or "too prejudicial."

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) "Moral turpitude is defined as the 'general readiness to do evil.'" (*People v. Feaster* (2002) 102 Cal.App.4th 1084, 1091, italics omitted.) "[M]oral turpitude does not depend on dishonesty being an element of the crime." (*Ibid.*) A witness's "moral depravity of any kind has some 'tendency in reason' (Evid. Code, § 210) to shake one's confidence" in their honesty. (*People v. Castro* (1985) 38 Cal.3d 301, 315.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark*, *supra*, 52 Cal.4th at p. 931.) We review the court's decision to admit impeachment evidence for abuse of discretion. (*Id.* at p. 932.)

10

The court did not abuse its discretion by admitting evidence of the child abuse convictions. The offenses qualified as crimes of moral turpitude, so they were probative of Brown's honesty. (*People v. Brooks* (1992) 3 Cal.App.4th 669, 672 [child abuse under section 273d, or willfully inflicting injury on a child resulting in a traumatic condition, is a crime of moral turpitude].) In addition, although Brown was convicted 18 years before trial, she was sentenced to 13 years in prison for the offenses. The remoteness of a conviction "loses most of its impact" if the defendant spent a substantial portion of the intervening time in prison. (*People v. Burns* (1987) 189 Cal.App.3d 734, 738; *People v. Mendoza* (2000) 78 Cal.App.4th 918, 926 [six- or seven-year sentence for an offense mitigated the remoteness of the conviction].) And although the charges in this case are not the same as child abuse, they are similar. That is, willfully inflicting great bodily injury on one's child is similar to willfully inflicting great bodily injury on one's coparent. Lastly, the admission of the evidence did not prevent Brown from testifying. For all of these reasons, the court did not abuse its discretion by concluding that the probative value of the prior convictions outweighed any prejudice from their admission.[1]

III.    Romero *motion*

Brown argues that the court applied an incorrect legal standard when it denied her *Romero* motion. We agree.

---

[1]    Brown contends that her trial was rendered fundamentally unfair by the cumulative effect of (1) excluding the officer's testimony about PCP and (2) admitting her child abuse convictions. The argument fails because there are no "errors to cumulate." (*People v. Gonzalez* (2021) 12 Cal.5th 367, 417.)

A.  *Additional background*

The probation report documented the probation officer's interview with Brown. Brown was born in 1970, and she began drinking alcohol at age 18. She was under the influence of alcohol when the events underlying her 2006 child abuse convictions occurred. She had custody of her three daughters, who were 4, 5, and 12 years old at the time. She said that she physically abused them, but she did not otherwise describe the circumstances of the offenses. Brown was sentenced to 13 years in prison for those convictions. She was released on parole in February 2017 and was discharged from parole in March 2019. Brown completed a 90-day substance abuse treatment program as part of her parole terms. She admitted that she had an addiction, and she was interested in substance abuse treatment.

The probation report also contained information about Brown's 1994 criminal threats offense. She was sentenced to three years of probation for that offense.

Brown moved to dismiss her prior strike convictions under *Romero* and section 1385. She argued that the 30-year-old 1994 conviction was remote in time and that she remained free from custody for over 10 years after that offense. With respect to the 2006 child abuse convictions, she argued that the convictions arose from "one continuous act of improperly disciplining her children." Her brief explained that she was under the influence of alcohol and became angry because her oldest daughter had been out with boys. She hit all three daughters with items in the house, including a beach chair, a belt, an ash tray, and a bottle.

12

Brown also argued that her mental health history supported dismissing her prior strikes. She submitted "a snap-shot" of her mental health records showing that she had been diagnosed with posttraumatic stress disorder, major depressive disorder, generalized anxiety disorder, bipolar disorder, and paranoid schizophrenia. The records dated back to 2018. One treatment summary stated: "Her diagnosed behavioral conditions can be associated with multiple traumas between 1983 and 1985. Patient was in a severe car accident which left her hospitalized with severe fractures to her upper extremities . . . ."

At the hearing on the *Romero* motion, defense counsel argued that the court should dismiss all three strikes, given their age, Brown's mental health history, her substance abuse history, and the fact that the jury acquitted her of the most serious charge in this case.

After hearing argument, the court stated: "I can't figure you out, Ms. Brown. I can't figure you out if you did these things because of mental illness or if you did these things because of psychosis due to drugs or alcohol, and if it is due to drugs and alcohol, then that is not a DSM-4 or 5, and the Court is not allowed to strike the strikes."[2] The court further stated: "I did sit through the trial. I know that the defendant is not remorseful; however, I do think that some mental health illness did play; however, not significant and substantial enough . . . under the mental health diagnoses that she get a

---

[2] "DSM" refers to the "Diagnostic and Statistical Manual of Mental Disorders (DSM), a text developed by the American Psychiatric Association." (*In re N.R.* (2023) 15 Cal.5th 520, 531.)

lower term. I do think that her violent act on that day—everyone at some point testified she looked like she was high on PCP. Now, was it unprovoked? I don't know."

The court then tentatively ruled that it would dismiss the 1994 criminal threats strike, because Brown successfully completed probation and the conviction was so old. The court also tentatively ruled that it would dismiss one of the 2006 child abuse strikes, because both of those convictions arose from the same incident. The court explained: "Was it mental health? No. Once again, according to the records, it was because of intoxication. Once again, no psychosis due to alcohol or drugs. Once again, no DSM-4 or DSM-5 from that incident. However, it is stacking, and it occurred in one incident." The court also announced an indicated sentence.

The court invited more argument after announcing its tentative ruling and indicated sentence. At one point, the court asked the prosecutor: "I mean, do you agree with me that the facts of these cases are alcohol-induced or drug-induced and not mental health? . . . So I know there is some mental illness, but I don't know if there was substantial evidence presented in order for the Court to make that leap that the Court, under the law, must take that into consideration. [¶] That's what I am having problems with, because in the record, it says she is suffering, but during this period of time when she is violent, is it because of drugs, self-medication, or mental illness?" The prosecutor responded that even if Brown's actions were drug- or alcohol-induced, there was no evidence that she was remorseful or willing to seek treatment and rehabilitation.

The court took a recess to give further consideration to its tentative ruling and indicated sentence. It explained again: "I just don't know if it is mental health or if it is

14

just because when she drinks or uses drugs, she becomes a very, very violent person, and that's where I'm stuck."

After the recess, the court decided not to dismiss either of the 2006 strikes for child abuse, but it dismissed the 1994 strike for criminal threats. The court also dismissed both prior serious felony enhancements. As to the 2006 strikes, the court reasoned: "I don't think her actions in the past were due to a mental illness, it was due to her being induced—you know, drinking and using drugs—and because of that, I'm not going to follow my tentative. I am going to have to change it."

The court sentenced Brown and remarked: "Do you understand how difficult this was, both of you? I wish I had more information, but I have to follow the law. I'll make a finding right now that the Court did not have substantial evidence in regards to the defendant's mental health. The Court is making a finding that her violent conduct was due to her being under the influence of drugs and alcohol, and that includes her past."

B. *Analysis*

Section 1385, subdivision (a), gives trial courts discretion to strike "prior felony conviction allegations in furtherance of justice." (*Romero*, *supra*, 13 Cal.4th at p. 530.) The length of the defendant's sentence "is the overarching consideration because the underlying purpose of striking" prior strikes "is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) The court "must consider whether, in light of the nature and circumstances" of the defendant's present offense and prior strikes, "and the particulars of [their] background, character, and prospects, the defendant may be

deemed outside" the spirit of the three strikes law "in whole or in part." (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

We review the ruling on a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 376.) The court abuses its discretion if the record affirmatively shows that the court misunderstood the scope of its discretion or applied the wrong legal standard. (*People v. Lua* (2017) 10 Cal.App.5th 1004, 1020.)

The court applied the wrong legal standard when it reasoned that if Brown's actions were "due to drugs and alcohol, then that is not a DSM-4 or 5, and the Court is not allowed to strike the strikes." A person's drug or alcohol use relates to their background, and whether they were under the influence when they committed an offense relates to the nature and circumstances of the offense. The defendant's background and the nature and circumstances of the prior offense are mandatory considerations, according to our Supreme Court. (*Williams*, *supra*, 17 Cal.4th at p. 161 [courts "must consider" the "nature and circumstances" of the prior strike offenses, as well as the defendant's "background, character, and prospects"].) Moreover, a defendant's substance abuse may be a mitigating factor that supports dismissing the prior strike (*People v. Garcia*, *supra*, 20 Cal.4th at pp. 494, 503; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1143-1144), regardless of whether there is a mental health diagnosis under the DSM. The court therefore applied an incorrect legal standard and misunderstood the scope of its discretion when it concluded that it was "not allowed" to dismiss the strikes because they resulted from Brown's drug or alcohol use.

Moreover, there is a reasonable probability that Brown would have obtained a more favorable result but for the court's error. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) There is evidence that Brown started drinking at age 18 and was under the influence of alcohol when she abused her children in 2006. She completed a substance abuse treatment program as part of her parole in 2017, and she expressed interest in more treatment. The court was tentatively inclined to dismiss one of the child abuse strikes, and the court's remarks demonstrate that it struggled with whether Brown's actions were attributable to mental illness or drugs and alcohol. When the court finally ruled, it stated that Brown's actions were due to her "drinking and using drugs," not mental illness, so the court would not dismiss the child abuse strikes. Given the totality of the court's analysis, there is at least a reasonable probability that the court would have dismissed one of the child abuse strikes if it had known that it was permitted to dismiss them even if they were caused by Brown's drug or alcohol use. We therefore remand for the court to reconsider the *Romero* motion under the correct standard. We express no opinion on whether the court should dismiss the child abuse strikes.[3]

DISPOSITION

Brown's sentence is vacated, and the order granting in part and denying in part the *Romero* motion is vacated. The matter is remanded with directions to reconsider the

---

[3] Brown also contends that there was sufficient evidence that her mental health issues contributed to her prior strikes and the present offenses, so the court erred by concluding otherwise. She contends that we must remand for the court to reconsider the *Romero* motion for that additional reason. We need not address that argument, given our rejection of the court's conclusion that it could dismiss the strikes only if they were caused by mental health issues rather than by drug or alcohol use.

17

*Romero* motion and then to resentence Brown.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

LEE
J.